UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21376-Civ-COHN
    (03-20226-Cr-COHN)
MAGISTRATE JUDGE P. A. WHITE

FABIAN LENNOX JOHNSON,          :

          Movant,              :

v.                             :              REPORT OF

UNITED STATES OF AMERICA        :          MAGISTRATE JUDGE

          Respondent.          :

_____

Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence for conspiracy to possess with intent to distribute five kilograms or more of cocaine entered following a guilty plea in case no. 03-20226-Cr-Cohn. The Court has reviewed the motion with supporting memorandum and exhibit, the government's response with multiple exhibits, the movant's reply, the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

Construing the claims liberally as afforded *pro se* prisoners pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant appears to raise the following claims in this collateral proceeding:

    1.   He was denied effective assistance of
         counsel at sentencing, where his lawyer
         failed to object to the government's
         leading questions of its witness, Anthony
         Brantley. (Cv-DE#2:5).

2.    He was denied effective assistance of counsel at sentencing, where his lawyer failed to request that Brantley be evaluated to determine his state of mind. (Cv-DE#2:5).

3.    He was denied effective assistance of counsel, where his lawyer failed to request that the government's witness, Leslie Smith, undergo a polygraph examination. (Cv-DE#2:7).

4.    The evidence at sentencing regarding the quantity of drugs involved in the offense constituted a constructive amendment to the Indictment, in violation of the movant's constitutional rights. (Cv-DE#2:8).

5.    His plea was not knowing and voluntary because it was based in part on promises made by defense counsel, and on the fact that the court failed to conduct a proper Rule 11 proceeding. (Cv-DE#2:10-11).

6.    The government violated the terms of his plea agreement by failing to recommend a reduction in the movant's base offense level based on application of the safety valve provisions of the U.S. Sentencing Guidelines. (Cv-DE#2:10).

7.    The court erred in denying his motion to withdraw his guilty plea. (Cv-DE#2:14).

8.    He is entitled to a downward departure based on his cultural assimilation, status as a deportable alien, post-conviction rehabilitation, and familial medical and financial hardship. (Cv-DE#2:18).

It should be noted that some of the movant's claims could have been, but were not raised on direct appeal. Notwithstanding, construing the movant's first claim of ineffective assistance of

2

counsel liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant appears to argue that counsel was ineffective for failing to pursue the claims raised in this collateral proceeding. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. United States v. Breckenridge, 93 F.3d 132 (4 Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984); Murray v. Carrier, 477 U.S. 478, 488 (1986).

## Procedural History

The procedural history of the underlying criminal case reveals that the movant was specifically charged by Indictment with conspiracy to possess with intent to distribute fifty grams or more of crack cocaine, in violation of 21 U.S.C. §841(a)(1) and 21 U.S.C. §846 (Count 1), and conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §841(a)(1), 21 U.S.C. §846 (Count 2). (Cr-DE#1).

On November 7, 2003, pursuant to the terms of a negotiated written plea agreement, the movant agreed to plead guilty to Count Two of the Indictment. (Cr-DE#227). In exchange, the government agreed to dismiss the remaining count after sentencing. (Id.). The movant acknowledged that the court must impose a statutory minimum of ten years and may impose up to a maximum of life imprisonment. (Id.:2). The government agreed to recommend that the movant's base offense level be reduced three levels based on the movant's timely acceptance of responsibility. (Id.). The movant and the government agreed to recommend, although not binding on the court or the

3

probation officer, that the court impose sentence within the guideline range, pursuant to U.S.S.G. §5C1.2, without regard to any statutory minimum sentence. (<u>Id</u>.). The parties further agreed to recommend, although not binding on the court or the probation officer, that: (1) the movant will not receive an upward or downward departure based on his role in the offense; and (2) that there is no basis for downward departure. (<u>Id</u>.:4). The movant further acknowledged that any estimate of the probable sentencing range, whether it comes from the court, defense counsel, the government, or the probation officer, is a prediction, not a promise, and is not binding on the government, the probation officer, or the court. (<u>Id</u>.). The movant further acknowledged that the government's recommendation as to sentencing is not binding on the court and the court may disregard the recommendation in its entirety. (<u>Id</u>.). The movant also acknowledged that he may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the movant, the government, or made jointly by the parties. (<u>Id</u>.). Finally, the movant agreed to waive all rights conferred by 18 U.S.C. §3742 to appeal any sentence imposed, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing. (<u>Id</u>.:5).

Prior to sentencing, the movant filed objections to the PSI, objecting to factual determinations made by the probation office regarding the offense conduct, as well as, to the determination of the type and quantity of drugs involved in the offense. (Cr-DE#s253,257).

On July 9, 2005 and July 14, 2005, the court conducted sentencing proceedings. At sentencing, defense counsel argued that

in light of the then recent Supreme Court decision in <u>Blakely v.</u> <u>Washington</u>, 524 U.S. 296 (2004), the court was precluded from determining that the movant's offense involved more than five kilograms of cocaine. (Cr-DE#303:4-13). The court rejected the movant's argument and permitted the government to present testimony regarding the type and quantity of drugs involved. (<u>Id</u>.). After hearing the testimonies of multiple witnesses and argument of the parties, the court found that the movant was directly involved in the distribution of over 1.5 kilograms of crack cocaine, and in excess of five kilograms of powder cocaine, and thus established the movant's base offense level at 38 under the Guidelines. (Cr-DE#303:174-75). The court granted a three level reduction based on acceptance of responsibility, thereby reducing the movant's base offense level to a level 35. A total base offense level 35, and a corresponding criminal history category I resulted in a guideline imprisonment range of 168 months to 210 months in prison. Thereafter, the court sentenced the movant to the low end of the applicable guideline range to a term of 168 months in prison, followed by five years of supervised release. (Cr-DE#299).

The movant appealed, raising the following claims:[1]

    1.    The court erred in imposing a sentence determined by facts which were neither charged in the Indictment nor admitted by the movant, in violation of <u>Blakely</u>.

    2.    The court erred in denying the movant's request to withdraw his guilty plea.

    3.    The court erred in determining that the movant's offense involved at least 1.5 kilograms of cocaine base.

---

[1]The claims raised on direct appeal are gleaned from the movant's initial brief which is attached as "Exhibit E" to the government's response. (Cv-DE#8:Ex.E).

On May 23, 2006, the Eleventh Circuit affirmed the conviction in a written but unpublished opinion. <u>United States v. Johnson</u>, 182 Fed.Appx. 919 (11th Cir. 2006)(table); (Cr-DE#359). Less than one year later, on May 19, 2007, the movant came to this court, timely filing this motion to vacate.[2]

## Discussion of Claims

As noted above, the movant raises multiple claims, each of which will be individually identified and treated in turn in this Report. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000)(<i>en banc</i>). The standard is the same for claims of ineffective assistance on appeal. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id</u>. at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-204 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the

---

[2]<u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

two-prong <u>Strickland</u> standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985). The movant claims that but for counsel's deficient performance, he would not have pled guilty and would have proceeded to trial.

Moreover, review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11 Cir. 1994).

In **claim one**, the movant asserts that he was denied effective assistance of counsel at sentencing, where his lawyer failed to object to the government's leading questions of its witness, Anthony Brantley. (Cv-DE#2:5). In **claim two**, the movant asserts that he was denied effective assistance of counsel at sentencing, where his lawyer failed to request a recess so that Brantley could undergo a psychiatric evaluation to determine his state of mind. (Cv-DE#2:5). These claims are belied by the record.

At sentencing, the government questioned Brantley regarding his involvement in the offenses and the terms of his plea agreement, and provided the witness with the plea agreement to refresh his recollection. (Cr-DE#303:23-26). During Brantley's

7

testimony, defense counsel did object to the government leading the witness. (Cv-DE#303:27). Defense counsel was also concerned with Brantley's mental state and his inability to recollect the quantity drugs he was involved in or pleaded guilty to. (Id.). Defense counsel was then permitted to *voir dire* the witness regarding his recollection of the terms of his plea agreement. (Id. at 30-33).

Thereafter, defense counsel moved to strike admission of Brantley's plea agreement on the basis that it was irrelevant for purposes of determining the quantity of drugs involved and relevant conduct as to the movant's offense. (Id.:33-34). The objection, however, was overruled by the court. (Id.:34). Brantley then went on to testify that he distributed between one to kilograms of crack cocaine during the period of the conspiracy. (Id.:34-35). According to Brantley, the movant supplied him with quantities of crack and powder cocaine at least every other day. (Id.:37). The amounts ranged from a quarter of a kilo to a kilogram of drugs. (Id.:37). Brantley also testified that the most crack cocaine the movant supplied him at a given time was two and a half ounces. (Id.:37-38). Brantley stated that he cooked nine ounces of crack cocaine for the movant on at least five occasions. (Id.45-46).

During defense counsel's cross-examination, the witness gave inconsistent statements regarding his prior use of drugs and alcohol which cast doubt on Brantley's credibility. Defense counsel requested that the witness undergo a psychiatric evaluation because his testimony was replete with inconsistencies, which the court denied. (Id.:53). Defense counsel then vigorously continued his cross-examination, in an attempt to establish Brantley's motive for testifying in the hopes of getting a reduction in sentence based on substantial assistance. (Id.:80-88).

During redirect, Brantley testified that the movant supplied him with approximately 54 kilograms of cocaine between the time he met the movant and the time of his arrest. (Id.:104-05). At least 40% to 50% of the cocaine supplied was then cooked and sold as crack, and that his prior testimony that he only sold one to two kilograms of crack was inaccurate. (Id.:105). After hearing argument from the parties, the court found that the movant was directly involved in the distribution of an excess of 1.5 kilograms of crack cocaine, and in excess of five kilograms of cocaine. (Cr-DE#305:174-75).

It should also be noted that in the movant's statement for acceptance of responsibility, he acknowledged that during the summer of 2002 until November, 2003, he sold Brantley ounces of powder cocaine, approximately one to two times per week. (Cv-DE#1:Ex.1). According to the movant, Brantley would either cook the cocaine into crack or sell it as powder cocaine. (Id.).

On the record before this court, the movant has failed to establish how further objection or evaluation of Brantley would have affected the outcome of the sentencing proceeding. The court did not abuse its discretion in determining the quantity of drugs involved in the offense. Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland v. Washington, 466 U.S. 668 (1984), and the movant is thus entitled to no relief on the claim.

It should alternatively be noted that sentence-appeal waivers are valid if made knowingly and voluntarily. United States v. Benitez-Zapata, 131 F.3d 1444 (11 Cir. 1997); United States v. Bushert, 997 F.2d 1343, 1352 (11 Cir. 1993). A waiver is knowing and voluntary if 1) the district court specifically questioned the

9

defendant about the waiver during the plea colloquy, or 2) the record demonstrates that the defendant understood the full significance of the waiver. <u>Benitez-Zapata</u> at 1446.

The waiver is enforceable against claims of ineffective assistance of counsel at sentencing, because "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." <u>United States v. Williams</u>, 396 F.3d 1340, 1342 (11th Cir. 2005).

At the change of plea hearing, the court conducted an extensive Rule 11 hearing. (Cr-DE#336). At that time, the movant acknowledged under oath[3] that he was satisfied with counsel's representation, and that he had discussed the plea agreement, the government's case, and the nature of the charges with counsel prior to the change of plea. (<u>Id</u>. at 4-8). The movant further acknowledged that he understood that, as part of the plea agreement, he was giving up his right to appeal the sentence imposed, or the manner in which the sentence was imposed. (<u>Id</u>.:9). The movant also denied being promised anything other than that which was contained in the plea agreement, and further denied being coerced or threatened into changing his plea. (<u>Id</u>.:10).

The movant also agreed with the government's proffer of facts, which revealed that in 2002, a wiretap was obtained which revealed that the movant supplied cocaine to Brantley. (Cr-DE#336:12). In

---

[3]Statements at the time of a plea colloquy are given a strong presumption of truth. <u>Blackledge v. Allison</u>, 431 U.S. 63 (1977). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).

addition, other cooperating witnesses, including Anthony Agnew would testify that the movant also supplied him drugs. (<u>Id</u>. at 13). As to Brantley, the evidence would establish that the movant supplied him with a quarter kilogram of cocaine, and that through the course of the conspiracy, the movant distributed over five kilograms of cocaine. (<u>Id</u>. at 13). When asked by the court if he agreed with the government's proffer of facts, the movant responded in the affirmative. (<u>Id</u>.:14).

As previously discussed in this Report, pursuant to the terms of the negotiated plea agreement, the movant waived any rights to appeal his sentence, any restitution order, or the manner in which the sentence was imposed. (Cr-DE#227). After the court explained the appeal waiver, the movant acknowledged he understood that as part of the negotiated plea, he was waiving his right to appeal the sentence imposed, or the manner in which his sentence was imposed.

To the extent the movant means to argue that his was unaware of the consequences of his plea, that claim is also belied by the record. As noted above, the Rule 11 proceeding thoroughly addressed the consequences of the guilty plea, the maximum and minimum penalties, and the sentence appeal waiver. Thus, it is clear that the movant may not collaterally challenge his sentence, as he purports to do so here, in the guise of an ineffective assistance of counsel claim.

There is nothing of record to suggest that the movant did not understand the significance of the waiver of appeal. The record reveals that the waiver did not result in an unlawful denial of his right to appeal, but was rather a part of a lawful, enforceable agreement between the movant and the government. Under the circumstances presented here, the movant is not only precluded from

11

challenging the manner in which sentence was imposed, but is also precluded from challenging his sentence in the guise of an ineffective assistance of counsel claim. <u>Williams</u>, <u>supra</u>. Moreover, even if the claim was not precluded, as discussed above, no showing has been made that any further objection as to the leading questions, or the request for a continuance to have Brantley evaluated would have resulted in a lesser sentence. Thus, the movant has failed to establish prejudice pursuant to <u>Strickland</u> and is therefore entitled to no relief on these claims.

In **claim three**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to request that the government's witness Leslie Smith undergo a polygraph examination. (Cv-DE#2:7). The thrust of the movant's argument appears to be that a polygraph examination would have diminished Smith's credibility regarding the substance of his testimony at sentencing. (<u>Id</u>.).

Review of the record reveals that Leslie Smith testified at sentencing that in 2000, he was introduced to the movant, at which time he purchased cocaine from the movant until 2003. (Cr-DE#305:10-11,14). Between 2001 and 2002, the movant supplied Smith with a quarter of a kilogram of cocaine on a daily basis, and then it increased to approximately one to kilograms of cocaine a week. (<u>Id</u>.:15). Around 2001, the movant started supplying Brantley with drugs. (<u>Id</u>.:13). Between 2002 and 2003, the movant supplied Smith with approximately a quarter kilogram of drugs on a weekly basis. (<u>Id</u>.:17). Smith further testified that around 2002, he observed the movant in possession of crack cocaine on a couple of occasions at Brantley's mother's house, and at other times in the neighborhood. (<u>Id</u>.:18,25). He recalled when the movant, at Brantley's mother's house, possessed seven to fourteen grams of crack cocaine on one

occasion, and on another, possessed twenty-five to twenty-six grams of crack cocaine. (Id.:25,26).

During cross-examination, Smith admitted to using twenty-four different aliases in order to deceive people and avoid going to jail. (Id.:36-37). Defense counsel vigorously cross-examined Smith regarding the truthfulness of his testimony, inquiring into his prior convictions, his motive for testifying, and the benefits he expected to receive therefrom. (Id.). (Id.:31-63). Given counsel's cross-examination, no showing has been made that requesting a polygraph examination would have changed the outcome of the sentencing proceeding.

In **claim four**, the movant asserts that the evidence at sentencing regarding the quantity of drugs involved in the offense constituted a constructive amendment to the Indictment, in violation of the movant's constitutional rights. (Cv-DE#2:8). According to the movant, the government constructively amended the indictment by presenting evidence that the offense involved not only powder cocaine, but also involved crack cocaine, which was never charged in the indictment or agreed to by the movant as part of the plea. (Id.).

The accused has a constitutional right to a notice of the case the prosecution will present at trial. Kotteakos v. United States, 328 U.S. 750 (1946). The Eleventh Circuit has established a two step inquiry when considering allegations of variance between indictments and proof at trial: (1) the Court must first determine whether material variance did indeed occur, and, if so, (2) whether the defendant suffered substantial prejudice as a result of the variance. United States v. Prince, 883 F.2d 953, 959 (11 Cir. 1989); See also: United States v. Reed, 980 F.2d 1568, 1581 (11

13

Cir. 1993).  To establish such prejudice, the defendant must show that "the proof at trial differ[s] so greatly from the charges in the indictment that the defendant was unfairly surprised and had an inadequate opportunity to prepare a defense.  <u>United States v. Caporale</u>, 806 F.2d 1487, 1500 (11 Cir. 1986).

A "constructive amendment" or "fatal variance" to an Indictment occurs when the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, broadens the possible bases for conviction beyond that contained in the Indictment. <u>United States v. Castro</u>, 89 F.3d 1443, 1452-1453 (11 Cir. 1996). "[N]ot all differences between an indictment and the proof offered at trial, rise to the 'fatal' level of a constructive amendment." <u>United States v. Randall</u>, 171 F.3d 195, 203 (1999).

A legally significant variance occurs when the evidence proves facts which are materially different from those alleged in the indictment. <u>United States v. Ramos-Osequera</u>, 120 F.3d 1028 (9 Cir. 1997). The Court must determine whether the movant was convicted of an offense not charged in the Indictment.  <u>United States v. Behety</u>, 32 F.3d 503 (11 Cir. 1994); <u>United States v. Artrip</u>, 942 F.2d 1568, 1570 (11 Cir. 1991). A variance between what is alleged in the charging document and the proof at trial is immaterial where there is no prejudice to the defendant. <u>Isom v. State</u>, 387 So.2d 529 (Fla. 3 DCA 1980).

In this case, the movant was specifically charged by Indictment with conspiracy to possess with intent to distribute fifty grams or more of crack cocaine, in violation of 21 U.S.C. §841(a)(1) and 21 U.S.C. §846 (Count 1), and conspiracy to possess with intent to distribute five kilograms or more of cocaine, in

14

violation of 21 U.S.C. §841(a)(1), 21 U.S.C. §846 (Count 2). (Cr-DE#1). On November 7, 2003, pursuant to the terms of a negotiated written plea agreement, the movant agreed to plead guilty to Count Two of the Indictment. (Cr-DE#227).

Prior to sentencing, the probation officer prepared a PSI which established the movant's base offense level 38 on the basis that the movant's relevant conduct involved both powder cocaine and crack cocaine. (PSI ¶42). Pursuant to U.S.S.G. §2D1.1, comment n.10, when an offense involves differing controlled substances, the drugs are converted to the amount of marijuana indicated in the Drug Equivalency Table, and the total amount of marijuana is utilized to determine the base offense level. (Id.). According to the Drug Equivalency Table, 1.5 kilograms of cocaine base converts to 30,000 kilograms of marijuana, and 5 kilograms of cocaine converts to 1,000 kilograms of marijuana. (Id.). On that basis, the probation officer determined pursuant to U.S.S.G. §2D1.1(a)(3), that an offense involving at least 31,000 kilograms of marijuana has a base offense level 38. (Id.).

Commentary to U.S.S.G. §1B1.3 provides that in the case of a jointly undertaken criminal activity, a member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that the defendant agreed to undertake which are reasonably foreseeable in connection with that activity.

The PSI and change of hearing transcripts reveals that the movant supplied numerous coconspirators, including Anthony Brantley, Henry Claude Agnew, and Leslie Smith, with cocaine and crack cocaine between 2000 and 2003. At sentencing, numerous cooperating coconspirators testified regarding the quantity and type of drugs supplied by the movant. Although counsel objected to

this testimony, and otherwise attempted to discredit their testimonies, the court overruled the movant's objection regarding the quantity and type of drugs attributable to him. As will be recalled, the court specifically found that the movant's offense involved at least 5 kilograms of cocaine and 1.5 kilograms of cocaine base. Under these circumstances, the movant cannot establish prejudice stemming from counsel's failure to further object to the amount and type of drugs attributable to him for purposes of determining his guideline range.

Even if counsel had further objected to the amount of drugs attributable to him, no showing has been made that the court would have sustained the objection. There is nothing of record to suggest that the court would have based the movant's guideline range only on the cocaine supplied by the movant during the conspiracy. Likewise, the movant cannot establish prejudice arising from counsel's failure to raise this nonmeritorious issue on appeal. Moreover, no constructive amendment or variance occurred in this case. Under these circumstances, no prejudice has been established pursuant to <u>Strickland</u> and the movant is thus entitled to no relief on the claim.

Moreover, due process and the Sixth Amendment require that an Indictment state the elements of an offense charged with sufficient clarity to apprise a defendant of the charges against him. <u>Russell v. United States</u>, 369 U.S. 749, 763-64 (1962). An Indictment is sufficient if it "'contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet,' [and it] enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>Government of Virgin Islands v. Moolenaar</u>, 133 F.3d 246 (3 Cir. 1998), <u>citing</u> <u>Russell</u>, <u>supra</u>. The Superseding Indictment

sufficiently apprised the movant of the charge against him.
Therefore, no showing has been made that counsel was ineffective
for failing to pursue this nonmeritorious claim.

If the movant means to argue that his conviction violated the
holding of <u>Blakely v. Washington</u>, 524 U.S. 296 (2004) because the
judge made factual determinations regarding the type and quality of
drugs involved in the offense, the claim likewise fails on the
merits.

In this case, the record reveals that after the movant's plea
was accepted by the court, but prior to the time the movant was
sentenced, the Supreme Court issued its opinion in <u>Blakely v.</u>
<u>Washington</u>, 524 U.S. 296 (2004). At sentencing, defense counsel
argued that the sentencing court should apply <u>Blakely</u> to the
movant's sentence and calculate the movant's sentencing range only
on facts included in the Indictment. The sentencing court denied
the request, which is supported by the movant's admissions at the
time of his change of plea proceeding wherein he acknowledged that
judicial fact-finding would be determinative of the sentence
imposed. Specifically, at sentencing, the court found that under
the guidelines it could consider the uncharged, relevant criminal
activity regarding the sale of crack cocaine in determining the
movant's base offense level. (Cr-DE#305:179-181). Moreover, the
movant's appeal waiver precludes consideration of counsel's
effectiveness at sentencing for failing to further challenge the
sentence based on <u>Blakely</u>. <u>See</u> <u>Williams</u>, <u>supra</u>.

When the issue regarding the lawfulness of the movant's
sentence was raised on direct appeal, the Eleventh Circuit on
August 24, 2005, entered an order dismissing the sentencing issues
based on the valid sentence appeal waiver. <u>United States v.</u>

17

_Johnson_, 182 Fed.Appx. at 920-921. The movant has not established a change of circumstance sufficient to warrant relitigation of this claim. _See Hobson v. United States_, 825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on direct appeal precludes further review of the claim in a §2255 motion), _vacated on other grounds_, 492 U.S. 913 (1989); _United States v. Nyhuis_, 211 F.3d 1340, 1343 (11th Cir. 2000); _Webb v. United States_, 510 F.2d 1097 (5th Cir. 1975); _Belford v. United States_, 975 F.2d 310, 313 (7th Cir. 1992), _overruled on other grounds by_ _Castellanos v. United States_, 26 F.3d 717 (7 Cir. 1994); _Graziano v. United States_, 83 F.3d 587 (2d Cir. 1996)(Collateral attack on a final judgment in a criminal case is generally available under §2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice.).

In **claim five**, the movant asserts that his plea was not knowing and voluntary because it was based in part on promises made by defense counsel, and on the fact that the court failed to conduct a proper Rule 11 proceeding. (Cv-DE#2:10-11). According to the movant, counsel promised he would remain at liberty on bond until sentencing.[4] (Cv-DE#2:15). He further argues that his plea was not knowing and voluntary because he never agreed that his relevant conduct involved crack cocaine, and that he was unaware that the jury could determine the quantity and type of drug

_____

[4]This claim is patently frivolous and belied by the Rule 11 proceeding which reveals that the movant stated under oath that he was satisfied with counsel's representation. At no time did the movant object to the fact that his bond was repealed prior to sentencing. Thus, the movant is not entitled to relief on this basis. Even if the request had been made, no showing has been made that the court would have granted withdrawal of the plea on that basis. Thus, the movant cannot establish prejudice arising from counsel's failure to pursue this issue.

involved in the offense. (<u>Id</u>.).

The movant again reiterates, as he did in claim one, supra, that he was promised a specific sentence of ten years in prison. He claims he was unaware that he could face a longer term of imprisonment based on his relevant conduct, which included his involvement in the sale of crack cocaine. Again, as discussed in relation to claims one through four above, the plea was knowing and voluntary. The court conducted a thorough Rule 11 proceeding. The movant knowing and voluntarily waived his rights. He acknowledged that any estimate or promises regarding his sentence was only a prediction; that his sentence would not be determined until after the PSI was prepared; and that the court's failure to follow any sentencing recommendation would not warrant withdrawal of the plea. The law is clear that an inaccurate prediction about sentencing alone will generally not be sufficient to sustain a claim of ineffective assistance of counsel. <u>United States v. Pease</u>, 240 F.3d 938, 940-41 (11th Cir. 2001)(rejecting argument by defendant sentenced as a career offender that his plea was not knowing and voluntary because he had relied on counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years); <u>United States v. Arvanitis</u>, 902 F.2d 489, 494-95 (7th Cir. 1990)(no ineffective assistance where claim based only on inaccurate prediction of sentence).

Moreover, as will be recalled, the movant raised the argument regarding his relevant conduct as to drug type and quantity in support of his motion to withdraw his guilty plea. The district court's denial of that motion was affirmed on appeal. <u>United States v. Johnson</u>, <u>supra</u>. The movant has thus failed to establish a changed circumstance sufficient to warrant relitigation of this claim. Under these circumstances, the movant is entitled to no

relief on this claim.

In **claim six,** the movant asserts that the government violated the terms of his plea agreement by failing to recommend a reduction in the movant's base offense level based on application of the safety valve provisions of the U.S. Sentencing Guidelines. (Cv-DE#2:10).

Title 18 U.S.C. §3553(f) provides a "safety valve" for less culpable defendants. <u>United States v. Brownlee</u>, 204 F.3d 1302, 1304 (11th Cir. 2000). The "safety valve" was enacted to permit courts to sentence less culpable defendants to guideline sentences instead of imposing mandatory minimum sentences. <u>United States v. Brehm</u>, 442 F.3d 1291, 1299 (11th Cir.), <u>cert. den'd</u>, __ U.S. __, 127 S.Ct. 457 (2006); <u>U.S.S.G.</u> §5C1.2. In order for the safety valve to be applicable, the defendant must meet the following criteria as outlined in 18 U.S.C. § 3553(f)(1)-(5):

(1)   the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2)   the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)   the offense did not result in death or serious bodily injury to any person;

(4)   the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5)   not later than the time of the sentencing hearing, the defendant truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

20

Brownlee, supra at 1304; U.S.S.G. §5C1.2.

Review of the plea agreement and the change of plea proceeding reveals that the government agreed to recommend a two level reduction based on application of the safety valve provisions of the guidelines if the movant complied with the above requirements, which included "a written statement truthfully setting forth all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan in the indictment...." (Cr-DE#227:4-5).

At sentencing, defense counsel raised the issue, at which time the government indicated that there has been testimony establishing that the movant was a major drug supplier. (Cr-DE#305:175-76). The trial court found that the movant was not entitled to the benefit of the safety valve provision of the Guidelines because he had not met all the criteria for its application. (Id.). Moreover, the government maintains that the movant's statement of culpability was also insufficient to meet the safety valve criteria because it failed to identify the movant's drug suppliers, and failed to describe the movant's direct role in the distribution of crack cocaine.

The law is clear that when the offense involves a conspiracy to distribute drugs, in order to be entitled to application of the safety valve, the scope of information that must be disclosed by the movant includes "information relating to the involvement of others and to the chain of the narcotics distribution." United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997). In this case, it appears that the movant was not forthcoming with all information, and thereby denied application of the safety valve

21

provisions of the guidelines. Thus, on the record before this court, there is no reasonable probability that further argument in this regard would have resulted in the court's granting a reduction in the movant's base offense level based on the application of the safety valve provisions of the Guidelines. Consequently, the movant cannot demonstrate either deficient performance or prejudice pursuant to Strickland v. Washington, 466 U.S. 668 (1984), stemming from counsel's failure to further pursue this nonmeritorious claim.

In **claim seven**, the movant asserts that the court erred in denying his motion to withdraw his guilty plea. (Cv-DE#2:14).

This claim was raised and rejected on direct appeal. See United States v. Johnson, supra. The appellate court noted that the movant sought vacatur of his plea in order to take advantage of the possibility of a more lenient sentence, but denied the claim on the basis that the movant had failed to establish that his change of plea proceeding was unlawful or otherwise infirm. United States v. Johnson, supra at 921. The court found no abuse of discretion where, as here, "permission to withdraw is refused to a defendant who seeks to take advantage of intervening changes in federal sentencing law." Id. Thus, the movant has not established a change of circumstance sufficient to warrant relitigation of this claim. See Hobson v. United States, supra.

Moreover, his reliance on United States v. Booker, 543 U.S. 220 (2005) is also unavailing.[5] Claim of Booker error cannot be raised for the first time in a motion to vacate. The Eleventh

_____

[5]At the time of imposition of sentencing, Booker was not decided. Moreover, the movant agreed as part of his plea that the court would consider and impose sentence after considering the federal guidelines. Any Booker argument would have failed, as did his Blakely argument. Thus, no deficient performance or prejudice has been established arising from counsel's failure to pursue this issue.

Circuit has held that these cases do not apply retroactively on collateral review. <u>See</u>, <u>Varela v. United States</u>, 400 F.3d 864, 867 (11th Cir. 2005); <u>In re Anderson</u>, __ F.3d. __, 2005 WL 123923, 2-4 (11 Cir Jan. 21, 2005)(holding that the rules in <u>Blakely</u> and <u>Booker</u> are not applicable retroactively on collateral review because the Supreme Court has not expressly declared it to be, but instead expressly extended the holding "to all cases on direct review"), <u>citing</u>, <u>Schriro v. Summerlin</u>, 542 U.S. 348, 358 (2004)(holding that <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), an extension of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), is not retroactive to cases on collateral review)); <u>see also</u>, <u>McCoy v. United States</u>, 266 F.3d 1245, 1259 (11th Cir. 2001).

In **claim eight**, the movant asserts that he is entitled to a downward departure based on cultural assimilation, his status as a deportable alien, post-conviction rehabilitation, and familial medical and financial hardship. (Cv-DE#2:18).

There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from failure to appeal. <u>Belford v. United States</u>, 975 F.2d 310 (7th Cir. 1992), <u>overruled on other grounds by</u> <u>Castellanos v. United States</u>, 26 F.3d 717 (7th Cir. 1994). The claim as raised is not cognizable in this collateral proceeding.

The movant first claims that he is entitled to a downward departure based on cultural assimilation. Even if counsel has

sought a downward departure on cultural assimilation, no showing
has been made that such a request would have been granted. A
downward departure for cultural assimilation should not apply to
sentences for drug offenses. United States v. Aguilar-Portillo, 334
F.3d 744, 750 (8th Cir. 2003).

The movant next claims that he is entitled to a downward
departure in his sentences based on his status as a deportable
alien. He claims that he is not being treated equally and is being
deprived of housing in a minimum security or community correction
center because of his status as a deportable alien. First, the fact
that a defendant's status as an alien renders him ineligible to
serve any part of his sentence in a halfway house or receive other
preferred conditions of confinement does not justify a downward
departure. See United States v. Maung, 320 F.3d 1305, 1309 (11th
Cir. 2003)(downward departure not proper if based on a desire to
shield a defendant from immigration consequences of conviction);
United States v. Veloza,[6] 83 F.3d 380, 382 (11 Cir. 1996)(overruled
on other grounds, United States v. Campbell, 181 F.3d 1263 (11th
Cir.1999)); United States v. Restrepo, 999 F.2d 640 (2 Cir. 1993);
see also, United States v. Lopez-Salas, 266 F.3d 842, 846-847, 849-
51 (8th Cir. 2001)(although the increased severity in the conditions
of confinement resulting from alien status is a possible basis for
departure, such a departure would be "only appropriate in
exceptional circumstances, such as where there is a substantial,
undeserved increase in the severity of conditions of confinement,
which would affect a substantial portion of a defendant's
sentence").

---

[6]In Veloza, the Eleventh Circuit held that (1) the unavailability of
preferred conditions of confinement; (2) the possibility of detention pending
deportation following the completion of the sentence; and (3) the effect of
deportation as banishment from the United States and separation from family were
not consequences of a defendant's alienage and did not warrant a departure.
United States v. Veloza, 83 F.3d 380, 382 (11th Cir. 1996)(citation omitted).

Moreover, the movant has no constitutionally protected interest in a particular housing assignment or transfer to a particular prison. <u>See</u>, <u>e.g.</u>, <u>McKune v. Lile</u>, 536 U.S. 24, 39 (2002)("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976)(no right to incarceration at ay particular prison).

The movant's argument that deportable aliens are categorically denied transfers to minimum security facilities, or community correction centers is also unavailing. As the Ninth Circuit has pointed out, the Bureau of Prisons excludes all inmates, not just aliens, who are subject to detainers, from participation in community-based treatment programs. <u>McLeon v. Crabtree</u>, 173 F.3d 1176, 1185 (9th Cir. 1999). Moreover, the Bureau of Prisons' decision to deny deportable aliens prerelease transfer to minimum security institutions does not implicate any constitutional right. <u>See</u> <u>Limas v. McNary</u>, 799 F.Supp. 1259, 1263 (D. Mass. 1992).

Finally, the Eleventh Circuit has held that a defendant is required to proffer a nonfrivolous defense to deportation before his consent to deportation could constitute mitigating circumstance warranting a downward departure under §5K2.0, resulting in the imposition outside the range established by the applicable Sentencing Guidelines. <u>United States v. Mignott</u>, 184 F.3d 1288, 1291 (11 Cir. 1999)(requiring defendants to proffer a nonfrivolous defense to deportation before recognizing consent to deportation as a ground for departure); <u>see also</u>: <u>United States v. Marin-Castaneda</u>, 134 F.3d 551, 555 (3 Cir. 1998); <u>United States v. Gonzalez-Portillo</u>, 121 F.3d 1122 (7 Cir. 1997). In this case, the movant has failed to proffer a non-frivolous defense to deportation, and any request for a downward departure on that

ground would have failed.

The movant also asserts that he is entitled to a downward departure in sentence because of familial financial and medical hardships. (Cv-DE#2:20). While this court is mindful that the movant's family faced hardships arising from the movant's arrest and conviction, this does not form a basis for vacatur of this conviction. See Belford, supra. If the movant means to argue that counsel was ineffective for failing to request a downward departure in his guideline range pursuant to U.S.S.G. §5H1.6 based on family ties and responsibility, that claim fails on the merits.

Pursuant to U.S.S.G. §5H1.6, "[F]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." The movant has failed to establish his entitlement to a downward departure based on his familial ties and responsibility. Consequently, he cannot establish prejudice arising from counsel's failure to pursue this claim.

<u>Conclusion</u>

It is therefore recommended that this motion to vacate sentence be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 31st day of October, 2007.

UNITED STATES MAGISTRATE JUDGE

26

```
cc:   Fabian Lennox Johnson, Pro Se
      Reg. No. 69620-004
      M.V.C.C. - Unit A-4
      555 I Cornell Drive
      Philipsburg, PA 16866

      Anthony W. Lacosta, AUSA
      U.S. Attorney's Office
      99 N.E. 4th Street
      Miami, FL 33132
```